IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| A & C DISCOUNT PHARMACY L.L.C., | § | |
| D/B/A MEDCORE PHARMACY | § | |
| PARTNERS 10, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:16-CV-0429-D |
| VS. | § | |
| | § | |
| PRIME THERAPEUTICS LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to remand presents the question whether the removing defendant has demonstrated by a preponderance of the evidence that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and that there is complete diversity of citizenship.  Finding that the defendant has met this burden, the court denies the motion.

I

This is a removed action in which plaintiff A & C Discount Pharmacy LLC d/b/a Medcore Pharmacy Partners 10, LP ("A&C") sues defendant Prime Therapeutics LLC ("Prime") for injunctive and declaratory relief and breach of contract.  Prime is a pharmacy benefits manager that administers the pharmacy benefits of its health plan clients, by, among other things, maintaining a network of retail pharmacies at which health plan members can fill their prescriptions.  A&C is a retail pharmacy in Prime's pharmacy reimbursement network.  Prime contends that A&C breached its provider agreement by submitting claims

for complex compound pharmaceuticals, and Prime sought to terminate A&C from its pharmacy network.

A&C filed suit in Texas state court on January 21, 2016, the day before it was to be terminated from the Prime network, seeking a declaratory judgment that it did not breach its provider agreement with Prime and a temporary restraining order ("TRO"), as well as temporary and permanent injunctive relief, to prevent Prime from dropping A&C from the Prime network and alleging anticipatory breach of contract.[1]  Prime removed the case on February 16, 2016 based on diversity jurisdiction under 28 U.S.C. § 1332.  A&C now moves to remand, contending that the court lacks subject matter jurisdiction because Prime has failed to establish that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and that there is complete diversity of citizenship.  Prime subsequently filed its second amended notice of removal, and it opposes the motion.

II

As the removing party, Prime "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper."  *Carnes v. Data Return, L.L.C.*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)).  "In general, defendants may remove a civil action if a federal court would have had original jurisdiction."  *De Aguilar v. Boeing Co.*, 47

---

[1]On that same day, A&C obtained an *ex parte* TRO in state court restraining Prime from terminating A&C's participation in its network.  The TRO has since expired, and Prime has terminated A&C from its network.  A&C's requests for preliminary and permanent injunctive relief remain pending.

F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)).  "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).  "The federal removal statute, 28 U.S.C. § 1441, is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)).  "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are completely diverse.  *See* 28 U.S.C. § 1332(a); *see also Uglunts v. Americare Servs., Inc.*, 2013 WL 3809681, at *1 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.).

III

The court considers first whether Prime has met its burden of establishing that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

A

If the plaintiff's state court petition demands monetary relief of a stated sum, that sum, if asserted in good faith, is deemed to be the amount in controversy.  *Dart Cherokee Basin*

- 3 -

*Operating Co. v. Owens*, ___ U.S. ___, 135 S.Ct. 547, 551 (2014).  But when, as here, the plaintiff's state court petition does not state the amount in controversy, the defendant's notice of removal must make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 553-54.  No evidence is required unless and until the plaintiff contests, or the court questions, the allegation.  *See id.* at 551, 554.

If the plaintiff contests the allegation, then the defendant must prove, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied.  *Id.* at 554 (explaining that, if plaintiff contests defendant's allegation, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied"); *see also Allee Corp. v. Reynolds & Reynolds Co.*, 2015 WL 1914663, at *3 (N.D. Tex. Apr. 28, 2015) (Fitzwater, J.).  The defendant's burden "is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (internal quotation marks omitted).  If the defendant can produce evidence sufficient to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed the sum or value of $75,000, exclusive of interest and costs.  *See De Aguilar*, 47 F.3d at 1411.

B

The only issue is whether the court can consider Prime's second amended notice of removal, and its attached exhibits, to determine whether Prime has made the necessary plausible allegation and whether Prime has shown, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied.  In its motion, A&C maintains that Prime cannot demonstrate that it is facially apparent that the amount in controversy exceeds the jurisdictional threshold and that Prime failed to attach any evidence to its notice of removal indicating the amount in controversy.  Prime responds that the information in its second amended notice of removal, filed after A&C filed its motion to remand, shows that the amount in controversy exceeds the jurisdictional threshold.

Prime's second amended notice of removal cites authority for the proposition that the amount in controversy in an action seeking declaratory or injunctive relief is the object of the litigation, the value of the right to be protected, or the extent of the injury to be prevented.[2] Prime points out that A&C's state court petition seeks injunctive relief to prevent Prime from terminating A&C from the Prime network and a declaratory judgment that A&C did not breach the provider agreement with Prime, and thus the object of this litigation is A&C's participation in the Prime pharmacy network, which Prime maintains is valued at more than

---

[2]"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam); *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 640 (5th Cir. 2003).

$75,000.  And Prime attaches as an exhibit to its second amended notice of removal the

declaration of its Senior Director of Pharmacy Audit, Anne Sayther ("Sayther"), to show the

value of this litigation.  According to Sayther, "[b]etween January and December 2015,

[A&C] billed Prime for between $274,027.17 and $1,977,632.26 in prescription

reimbursements each month pursuant to the terms of the operating agreement between the

parties," and "[b]etween January and December 2015, [A&C] billed a total of

$10,091,693.43 under its contract while a member of the Prime Pharmacy Network."  2d Am.

Not. of Removal Ex. 1 ¶ 3.  And Prime contends that "[A&C] asserts that it will lose these

customers if an injunction is not entered."  *Id.* at ¶ 15 (citing Pet. ¶ 13).  Thus Prime avers

that "[A&C] has asserted that it will lose over $10 million in business if it is terminated and

an injunction does not issue."  *Id.*

Prime also points out in its second amended notice of removal that A&C seeks

damages for an alleged breach of contract, which Prime asserts is also valued at over

$75,000, and further alleges that

> [i]n its First Amended Complaint filed in this Court, [A&C]
> specifies that its breach of contract claim is based both on the
> termination of the contract and on Prime's refusal to pay certain
> claims submitted.  The value of the termination of the contract
> is pleaded by [A&C] to represent over $10 million in business
> on an annual basis set forth above, which certainly meets the
> jurisdictional requirement for diversity jurisdiction.  In addition,
> [A&C] asserts a claim for breach of contract based on the claims
> submitted which Prime has rejected and refuses to pay.  [A&C]
> asserts that Prime notified [A&C] that it had suspended
> payments in the amount of $109,687.84 on January 20, 2016,
> $73,527.23 on January 27, 2016, and $135,058.50 on February
> 10, 2016.  (First Amended Complaint ¶¶13-16.)  This case was

- 6 -

removed on February 16, 2016[.]

*Id.* at ¶ 16.  And Prime points to Sayther's declaration, which avers:

> On January 20, 2016, Prime notified [A&C] that it suspended payment of claims which [A&C] submitted to Prime for payment during the period of January 9-15, 2016.  Upon further review of these claims, Prime denied payment of claims totaling $99,624.42.  On January 27, 2016, Prime notified [A&C] that it suspended payment of claims which [A&C] submitted to Prime for payment during the period of January 16-22, 2016.  Upon further review of these claims, Prime denied payment of claims totaling $74,766.96.  On February 4, 2016, Prime notified [A&C] that it suspended payment of claims which [A&C] submitted to Prime for payment during the period of January 23-29, 2016; the total amount of claims suspended during this period was a total of $158,407.88[.]

*Id.* at Ex. 1 ¶ 4.  Prime alleges that "[r]ecovery of these denied claims is part of the damages which [A&C] seeks in its breach of contract claim."  *Id.* at ¶ 17.

In its reply, A&C does not challenge that Prime's second amended notice of removal makes the necessary plausible allegation or provides competent proof establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.  Rather, A&C only contends that the court should not accept Prime's allegations regarding the amount in controversy in its second amended notice of removal.  It maintains that Prime's original and first amended notices of removal contained only conclusory statements, and that Prime should not be allowed to amend its defective allegations and make completely new allegations regarding the amount in controversy after its statutory right of removal has expired.  A&C also points out that, when the court directed Prime to correct defects in its notice of removal and first amended notice of removal, the court only ordered

- 7 -

Prime to amend its pleading of diversity of citizenship, and it did not give Prime permission to amend its allegations concerning the amount in controversy, nor did Prime seek permission to amend its allegations concerning the amount in controversy.  The court disagrees with A&C's position concerning the leeway afforded Prime to amend its notice of removal.

A defendant may freely amend a notice of removal within the 30-day period set out in 28 U.S.C. § 1446(b).  *See Wilson v. Int'l Bus. Machs. Corp.*, 2011 WL 4572019, at *2 (N.D. Tex. Oct. 3, 2011) (Fish, J.) (citing *Richardson v. United Steel Workers of Am.*, 864 F.2d 1162, 1165 (5th Cir. 1989)).  Thereafter, a defendant may amend only to set forth more specifically the jurisdictional grounds for removal that were imperfectly stated in the original notice.  *See D.J. McDuffie v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146-47 (5th Cir. 1979) (explaining that faulty allegation of jurisdiction in notice of removal may be cured in the trial or appellate court);  *Fireman's Ins. Co. v. Robbins Coal Co.*, 288 F.2d 349, 350 (5th Cir. 1961) ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.");  *see also Wormley v. S. Pac. Transp. Co.*, 863 F. Supp. 382, 385 (E.D. Tex. 1994); 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3733, at 649-51 (4th ed. 2009) (explaining that after the 30-day period for removal, "defendants may amend the notice only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice," and that "an amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount" (citing cases)).  Furthermore, A&C cites no authority for the

proposition that Prime cannot amend its notice of removal without first seeking permission from the court.

A&C's notice of removal alleged diversity of citizenship under 28 U.S.C. § 1332.  It asserted that "the amount in controversy requirement of 28 U.S.C. § 1332(a) is met, as [A&C] seeks an injunction and declaration to prevent the termination of a contract the value of which exceeds $75,000.00, exclusive of interest and costs, as well as damages for an alleged breach of contract," and it alleged that "[b]etween January and December 2015, [A&C] billed Prime for between $274,027.17 and $1,977,632.26 in prescription reimbursements each month."  Not. of Removal ¶ 6.  Thus Prime was entitled—with or without leave of court—to file an amended notice of removal outside of the 30-day window to clarify facts relating to the amount in controversy.  *See Rigel v. Rosewood Hotels & Resorts, L.L.C.*, 2014 WL 6991331, at *1-2 (N.D. Tex. Dec. 11, 2014) (Lynn, J.) (explaining that defendants filed amended notice of removal to address jurisdictional concerns raised in plaintiffs' motion to remand, without discussing whether defendants had sought permission to do so, and concluding that defendants could file amended notice of removal outside of 30-day window "to clarify facts relating to the citizenship of [defendants]").  The court therefore finds that Prime's second amended notice of removal and attached exhibits made the necessary plausible allegation and established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  A&C has presented no evidence that it will not be able to recover more than the jurisdictional amount.  *See De Aguilar*, 47 F.3d at 1411.  Accordingly, the court denies A&C's motion to remand on this ground.

IV

The court considers next whether Prime has met its burden of establishing that the parties are completely diverse.

A

It is settled that diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). "This means that no plaintiff can be a citizen of the same state as even one defendant." *Davis v. Am. Home Prods.*, 2005 WL 910601, at *2 (N.D. Tex. Apr. 20, 2005) (Fitzwater, J.). "'The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction.'" *Guerrero v. State Farm Mut. Auto. Ins. Co.*, 181 F.3d 97, 1999 WL 346977, at *2 (5th Cir. May 20, 1999) (per curiam) (unpublished table decision) (quoting *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975)). Thus when a defendant removes based on diversity of citizenship, the notice of removal must allege diversity of citizenship by distinctly and affirmatively alleging the citizenship of each party. *See, e.g., Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." (citing *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *B., Inc. v. Miller Brewing*, 663 F.2d 545, 549 (5th Cir. 1981) ("[W]here an out-of-state defendant removes an action from state to federal court, the burden is upon the removing party to plead a basis for federal jurisdiction." (citing cases)).

- 10 -

B

A&C contests the sufficiency of Prime's allegations of citizenship in its notice of removal, contending that Prime does not properly allege the citizenship of A&C. Prime responds that its second amended notice of removal, filed after A&C filed its motion to remand, properly alleges diversity of citizenship. In its reply, A&C does not challenge the allegations of citizenship in Prime's second amended notice of removal. Rather, it only asserts that Prime's second amended notice of removal should be disregarded because it included completely new allegations regarding diversity of citizenship after Prime's statutory right of removal had expired. For the reasons explained above, the court disagrees.

A&C's notice of removal alleges diversity of citizenship under 28 U.S.C. § 1332 and asserts that "there is complete diversity of citizenship." Not. of Removal ¶ 2. It avers that A&C "is a Texas limited liability company with its principal office in Dallas, Texas," and "is therefore a citizen of the State of Texas." *Id.* at ¶ 3. Additionally, Prime maintains that it "is a limited liability company organized under the laws of Delaware, with its principal place of business in Eagan, Minnesota," "that none of [its] Members are citizens of Texas," and therefore it "is not a citizen of the State of Texas." *Id.* at ¶ 4. By pleading diversity on these bases, Prime's notice of removal failed to properly allege the citizenship of A&C (and Prime). *See infra* § IV(C). But because Prime's notice of removal attempted to allege diversity of citizenship between A&C and Prime, it was entitled to file an amended notice of removal outside the 30-day window to clarify facts relating to the citizenship of A&C and Prime. *See, e.g., Howery*, 243 F.3d at 919-20 ("[W]hen the record establishes the diversity

- 11 -

of the parties, but the party asserting federal jurisdiction has failed to specifically plead that the parties are diverse, [the court of appeals] allow[s] that party to amend its pleadings to correct for their technical deficiency."); *Rigel*, 2014 WL 6991331, at *2. Thus the court denies A&C's motion to remand on this ground.

## C

Even though A&C does not challenge the specific allegations of citizenship in Prime's second amended notice of removal, the court must still determine whether Prime has properly alleged diversity of citizenship. For diversity jurisdiction purposes, a natural person is considered a citizen of the state where that person is domiciled—that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007); *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). The citizenship of a limited liability company is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). A corporation is considered to be a citizen both of its state of incorporation and of its principal place of business. *See Ill. Cent. Gulf R.R. Co.*, 706 F.2d at 637.

Prime distinctly and affirmatively alleges the citizenship of the parties. It alleges that A&C is a limited liability company and a citizen of Virginia or Texas because its sole member, Bekim Veseli ("Veseli"), is a citizen of Virginia or Texas. To show Veseli's citizenship, A&C points out that A&C was required to disclose its ownership in order to participate in Prime's pharmacy network, and it provides A&C's pharmacy disclosure

statement that identifies Veseli's address as being in Reston, Virginia. Prime also provides the declaration of its counsel, Blake A. Bailey, Esquire, who asserts that the Texas Secretary of State's website provides a Texas address for Veseli. Additionally, Prime alleges that it is a limited liability company with nine members that are all corporations, and Prime alleges each corporation's citizenship (i.e., the state of incorporation and principal place of business), none of which is a citizen of Virginia or Texas. Accordingly, Prime has sufficiently alleged diversity of citizenship.

*   *   *

For the reasons explained, A&C's motion to remand is denied.

**SO ORDERED**.

June 9, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 13 -